The next case today is United States v. Daniel Frederickson, Appeal No. 201033, Attorney Angiulo. Good morning, and may it please the Court, Attorney Leonardo Angiulo, on behalf of the appellant Daniel Frederickson, I'd ask to reserve three minutes for rebuttal. Yes, you may have it. Thank you, Your Honor. In preparing for oral argument, I think the biggest issue is, why doesn't the lower standard of proof at a supervised release revocation hearing sort of end the analysis in the first section of my brief? And I'd suggest that the answer is the Fifth Amendment. I think when you look at the revoking court's analysis, she relied heavily on United States v. Watts. And the thing about Watts is that it seemed to be answering a different question, in that it was dealing with the use of acquitted conduct at a sentencing, the degree to which a punishment should be imposed, not whether or not a criminal act had occurred. And I suggest what's important there is that Watts was relying on the logic of United States v. one assortment of 89 firearms. And people, in this case, Mr. Frederickson, he's not property. So the logic that would apply to firearms or any kind of physical item is different than the greater protections that are afforded by the Fifth Amendment, the due process and the collateral estoppel principles. This was sort of a difficult issue for everyone. Excuse me. I mean, you are arguing collateral estoppel, are you not? I am. Okay. And so how can you argue, if you're arguing the application of collateral estoppel, how can you suggest that the different burdens of proof do not matter? I mean, at the criminal trial, I believe, on the assault charge, the government had to disprove beyond a reasonable doubt the self-defense theory. At the probation revocation, the burden there was preponderance of the evidence, not reasonable doubt. The government could disprove the self-defense theory by preponderance of the evidence. That is true, is it not? Isn't that an accurate account of the different burden at the revocation hearing? I don't think Your Honor's wrong. But why does that not matter for the application of collateral estoppel if those are the different burdens? Why does it not matter? And I think it doesn't matter because the— Five minutes remaining. Thank you. Because the factual issues, without diving into the sufficiency portion of the argument, I mean, we're dealing with a specific issue that got addressed by the jury on the same set of facts. And so what we would say is that the jury's verdict must matter. And even with that drilling down into that point that Your Honor just raised, the fundamental question was whether or not there was self-defense. And it suggests that when you look at something like Commonwealth v. Brown, it goes to the equity and the fairness of it all. The Commonwealth v. Brown case was out of Pennsylvania, and it's cited in my brief. And it goes actually so far to advocate that they should put probation violation hearings, which is directly analogous, I'd suggest, to a supervised release violation after the trial of a substantive offense because of the unjust result that would come from being acquitted of a substantive offense and later being found in violation and serving time for it. And I think that that's compounded when you—perhaps that's a bad choice of words given the last case, but I think it's compounded by U.S. v. Lombard and more specifically U.S. v. Dowling. Those are both cases that are cited in the brief that talk about the importance of looking at facts. And this is Dowling that looks at the fact specific analysis. I see Judge Barron moving. I didn't know if there was a question. I don't want to interrupt, but I had just two questions. Do you feel like you finished your thought? I could probably circle back to it if your questions don't touch on it. The two thoughts are, the first is, imagine the exact same conduct occurs, and the government decides, you know, two people have divergent stories as to what happened in the bathroom. So it's going to be hard to prove to a jury beyond a reasonable doubt the offense. So I don't think it makes any sense to prosecute it as a crime. On the other hand, for purposes of supervised relief, we don't have to prove the criminal act beyond a reasonable doubt. So we never take it for the criminal charge to begin with. There's no state prosecution or anything like that. They just go right to federal court and say, but I can prove this conduct happened by preponderance, and that's enough to revoke supervised relief. You would, at that point, say there's no problem with that, correct? I think I would have to, yes. And so that seems like the difficulty, which is it does seem a little bit arbitrary that because there's a state prosecution or even a federal prosecution of the offense, that somehow precludes the separate effort to revoke supervised release based on the standard that the statute gives for revoking supervised release. That seems the difficulty. No. And I, you know, that was I acknowledge that it was something that I struggled with in preparating, excuse me, preparing the oral argument, the brief. But the issue is. Yeah, go ahead. No. So I guess the answer is that the difference here is that they chose to take a jury trial. And, you know, there's a related version of that, though, which I guess Judge Justice Kavanaugh has pointed to and others, which is that individual judges still it might bear on the substance of reasonableness of the sentence imposed, even if there's not a constitutional limit on relying on the acquitted conduct. And to that point, the one thing that does trouble me about the district court's decision here is I can't tell if there is a finding by the district court that the alleged sexual assault did not occur. As I read it, there doesn't seem to be any such finding. And I find it a little hard to see how the sentence explanation holds up. If it's predicated on the assumption that that alleged assault did occur, the sexual assault. So I don't know if you want to comment on that. The opinion at one point suggests that, well, just because of the overreaction. But then a lot of it reads as if at the same time she's thinks the probation officer did nothing wrong. And the your client did a sucker punch and just acted completely inappropriately. But there doesn't seem to be an acknowledgment that there there is a allegation by him that he was sexually assaulted by a probation official. And as you know, very difficult setting for him. And it seems to me that if if there's no finding that he's lying, that that has to be accounted for in the sentence. But it doesn't seem to be. So I don't know if you have a thought on that. No, I, I agree with that. And I think that that was one of the the most difficult things is that, you know, the failure. That's time. If I may answer, please. Thank you. You know, the failure to say that he hadn't that that the sexual assault did not occur is means that there's also a commentary on what would have been an appropriate way to respond to that. Should it have been disclosed at certain points? And I think that, you know, especially for for all people who suffered sexual assaults. I mean, how do you process that? When does it get disclosed? And I think that the idea that there would be. I agree with your honor. I think that the failure to say that it did not happen and then coupling that with the vehemence and the partiality of the commentary was difficult for us. I mean, I thought the district court did seem to express considerable skepticism that the sexual assault had occurred in the sense that I thought she was at pains to point out that there was never any allegation about the sexual assault until the trial itself. I mean, it was never. I believe your client never reported that to anyone as as the triggering event until the trial itself. Didn't the district court judge sort of focus on what she seemed to think was an oddity that it was never even mentioned until the trial itself. I thought she's suggesting that civil skepticism. With the court's permission, I'd like to respond to the question. Yes, go ahead. So I think that specifically there's the commentary regarding Officer Garlick's testimony and about how he was a friend of the family. And it didn't make sense that he wouldn't say something to Officer Garlick upon being arrested. But, you know, as as we raised below, I mean, you know, he was never questioned. He was never interrogated. There was never any questions asked by Officer Garlick. And separate from that factual issue. Yes, the court did mention that. But I think that's different from laying out an explicit basis for the judgment that says, I find the sexual assault did not occur. That Mr. Fredrickson lied about the incident and that it's an excuse that respectfully that simply did not happen. Thank you, counsel. Any further questions? All right. Thank you. Thank you. Thank you, Attorney Angelo. If Attorney Sun could please unmute. You may proceed. Thank you. May it please the court. Lucy Sun for the United States. Your Honor, I just want to begin by addressing some of the issues that were discussed during Mr. Angelo's presentation before the court. And the first is whether or not there is one ultimate issue of fact. Just because that there are similar facts before the court as well as the jury does not necessarily mean that the same ultimate issue with a fact was before both fact finders. The actual charge of 18 U.S.C. 1 1 1 has three elements. The first is that the defendant committed a forcible assault. The second is that the victim was a federal employee at all relevant times. And the third is that the defendant acted willfully. In addition to proving the three elements beyond a reasonable doubt, the government also needs to prove the two elements of self-defense or that the self-defense instruction did not apply beyond a reasonable doubt. I don't really think that there is a lot of dispute as to elements one and two. The defendant admitted himself that he did punch the victim. And although element two was not stipulated to the defendant really did not mention it in their closing arguments as to the question of whether or not the defendant's actions were willful. The defendant testified during direct examination first about the alleged sexual assault. Then he was asked, what was your reaction? And his answer was stunned, absolutely stunned out of my mind. Question. That was your mental reaction. Was there a physical reaction to being touched like that? Answer. Well, you mean, what did I do? Question. What did you do next, sir? Answer. I punched him. And then a few lines down, the question was, and after you punched him under the left eye, what happened next? Answer. I just remember we ended up on the grounds. I pretty much held him by his shoulders. Like, what are you doing? What the hell? What do you even do here? Like, you work here? I was just flabbergasted. Question. What was your emotional state while this was going on? Answer. Like I said, absolutely stunned. I would also suggest to your honors that as to Mr. Angello's closing, it was vague as to whether or not the appellant's actions were intentional. And the definition of willfulness is voluntary and intentional. Mr. Angelo specifically stated that the victim, quote, had no right to put his hands on Mr. Fredrickson in that way. And when he did, he did. And when he did, the response from Mr. Fredrickson was, as he explained, was shock. Shock and response. I don't disagree with that snap, because that's what happened. Somebody touched him and there was a response. Ms. Son, this is a little bit of an odd argument to come from the government. I would have thought the government was more interested in establishing as a general proposition that collateral estoppel does not apply here because of the difference in the standards. And that the government is required to approve. So I'd like you to comment on that. I'd also like you to comment on whether, in fact, it is important that there was also state charges pending against him. Although the federal charges were those that were actually prosecuted. Both of those suggest very narrow approaches to the more general question that is presented in the case, as Judge Lopez pointed out in his first question. Yes, Your Honor. I just wanted to make the quick point that there is no one ultimate issue of fact. And so it's the government's position that collateral estoppel does not apply. But moving on to what Your Honor has mentioned, the Supreme Court has long held that an acquittal in a criminal case does not preclude the government from litigating an issue in a subsequent action governed by a lower standard of proof. This is true in civil forfeiture cases that are subsequent to an acquittal, that are not barred by collateral estoppel, even if the facts are the same because of the different birds of proof. And this is also true in criminal cases such as Downing and Watts. In Downing, the court held that acquitted conduct can be the basis of evidence admitted under 404B. And in Watts, the court held that acquitted conduct can be the basis of relevant conduct for sentencing enhancement. And really, the reason why is because an acquittal, especially with a general verdict, doesn't equate to a defendant's innocence. It's only the acknowledgement that the government hasn't proved their case beyond a reasonable doubt, or the necessary elements of the offense beyond a reasonable doubt. And I would submit to Your Honors that just because a fact finder has found that the government hasn't proven their case beyond a reasonable doubt, doesn't necessarily mean that the same fact finder, or even a subsequent fact finder, would find that the government hasn't proved their case beyond preponderance of the evidence, as the burden is significantly lower. Five minutes remaining. Counsel, I thought the case law suggests that, yeah, the general verdict is often not very illuminating about what a jury actually found. But the case law suggests that if you're in a situation where you, if you drill down a little bit, even if you have a general verdict, you can perhaps figure out what the dispositive finding of the jury was. Were you trying to suggest with your opening remarks that perhaps the government failed to prove willfulness as a way of suggesting we should not conclude that the defendant was acquitted on the basis of self-defense, and hence that finding, and hence the appellate cannot argue collateral fault with respect to that finding when you move over to the probation revocation hearing. Was that the point of your initial? That is correct, Judge Lopez. That was the point of my initial opening, simply that the fact finder, that being the jury, could have determined that the defendant had not acted willfully, or the jury could have determined that the government did not prove beyond a reasonable doubt the self-defense instruction. So you think there is ambiguity about the basis for the acquittal in the criminal trial? That is correct, Your Honor, and I believe that at the revocation hearing, Mr. Angelo even said, and this is volume four, page 188, quote, there's an argument about willfulness here that, you know, I believe it was Mr. Fredrickson's testimony is that he was just so shocked and it was just a reaction. So I think it's fair to say that there is an open question as to whether or not, I'm sorry. Willfulness did not need to be proved at the revocation? Willfulness needs to be proved at the revocation. I believe that it's fair to say that the judge determined that the self-defense instruction did not apply in this circumstance based on the judge's statements during the revocation hearing. However, I think that there is ambiguity as to what the jury determined when they came back of a verdict of not guilty. Counsel, I was going to follow up on Judge Barron's question. I don't see how it helps you to focus on willfulness. It doesn't matter if it's willfulness or acquittal for self-defense, given that there's no supervised release violation unless it's willful. So how are we avoiding any issue in this case by following your newfound alternate argument? Your Honor, I just simply wanted to make that point that there might have not been an ultimate issue of fact that was similar in both proceedings. Perhaps you ought to move on to any other arguments you have. Yes, and as to Judge Barron's question previously, which was that the judge did not make a finding of sexual assault, the judge did make a specific finding that she did not believe that the defendant was credible. Where is that? That is in Volume 4, page 171. What does she say? What are the words that she says where she finds it did not happen? In contrast to Mr. Walter's testimony, there is no evidence supporting the defendant's version of the facts. The defendant is simply not credible. And so because the sexual assault story only came from the defendant, and she's stating that there's no evidence supporting the defendant's version of the facts... We should read it as a finding that the assault did not occur. Yes, because he's the only one that testified to it. There's no evidence of it aside from his testimony, and the district court found the defendant was not credible. I got it. Your Honor, just moving on very quickly to the state law issue. This court doesn't even need to reach the issue of whether or not a supervisory certification can go forward despite an acquittal because the court can affirm... Going back to the point you made, what is the significance of the statement in the district court's opinion that even if it did occur, the response was disproportionate and that would justify the sentence? That's troubling to me. Do you think that? I think that she was making the comment that I don't believe that the sexual assault happened. But let's just say that somebody else could find that the sexual assault happened. Even if that is the case, I don't believe that the self-defense instruction applies. Not necessarily that she believes, but somehow concluded differently. I think that she was covering her bases to show that not only has the government proven by preponderance of the evidence, the elements... Do you read the actual sentence and the explanation for it to be dependent on a finding that the sexual assault did not occur? Yes. Okay. Would Your Honors like to hear my argument as to state law, or should I just rest in the brief? I think you could rest on your brief as to that point. Are there any further questions from the court of Ms. Sun? No. Thank you. We have three minutes reserved.  Yes. Thank you, Your Honor. Just very briefly, I'd say that the defense is not advocating for a position where people get away with wrongdoing. Really, what we believe our position to be about is respecting the judgments of juries and affording them a meaningful role in the public perception of the administration of justice. And absent that... Could you address the point that Ms. Sun just made about the finding that your client was not credible having to be read as a finding that the assault did not occur? Since if he's not credible, there's no evidence in the record that could support the claim that there was an assault. So I guess my position from that would be that it's not nearly unambiguous enough to serve the role that we needed it to. I think when you compare that statement that was just cited with the other statement that we had previously discussed, I think that at best it's an inconsistency. And at worst, that passing statement that was cited by Attorney Sun just fails to address the fundamental issues of the disputes between the parties, the inconsistencies between the evidence. I'm sorry, how can you characterize a flat statement that the defendant was not credible as a passing reference by the district court? I guess that's... That's rather an important finding. I can understand your Honor's position and I was trying to think of... So what's the clear error about that? Well, I guess the clear error would be in light of the medical testimony, in light of the inconsistencies in the physical evidence, the photographs, the lack of blood in the lobby area where he said he dragged himself across the floor. The inconsistency between his statements in the medical records versus what was said to the police versus what was said to witnesses immediately on the scene. I thought Ms. Sun, before she read us that, read us that the district court did find credible the probation office intern testimony. Is that correct? Based on that small bite, I guess that's one way to interpret that. But I would back up to my previous statement where I would say that it's an inconsistency with the other commentary and the other statements. And I think it was, as outlined in the brief, it was especially important given all of the evidence, given all of the personalities, the media coverage, if I may finish. Yeah, finish your sentence and then you're through. Thank you. Given all that was going on in the case, given all the externalities, that a very clear, definitive explanation was extremely important. Thank you, counsel. Thank you.